UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------  X
ROBERT MILTON,　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　:　　**MEMORANDUM**
　　　　　　　　　　　Petitioner,　　　　　　　:　　**DECISION AND ORDER**
　　　　　　　　　　　　　　　　　　　　　　:
　　　　　- against -　　　　　　　　　　　　　:　　19-cv-672 (BMC)
　　　　　　　　　　　　　　　　　　　　　　:
WILLIAM LEE,　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　Respondent.　　　　　　:
-----------------------------------------------------------  X

**COGAN**, District Judge.

　　　　Petitioner seeks relief from his state court conviction for third degree robbery, two counts of witness bribery, five counts of second degree criminal contempt, and one count of resisting arrest. The facts will be stated below as necessary, but to summarize, his conviction arises out of an order for protection, in violation of which he first assaulted and then on several subsequent occasions contacted his former girlfriend, taking two cellphones from her when he assaulted her to stop her from calling the police. In some of the contacts, he threatened her. In others, he attempted to bribe her with a share of the proceeds of his anticipated recovery from a potential police misconduct lawsuit if she declined to testify against him before the grand jury.

　　　　By Order dated April 5, 2019, familiarity with which is assumed, the Court ordered petitioner to show cause why his petition should not be dismissed as untimely under 28 U.S.C. § 2244(d). The Order to Show Cause went through the chronology of the state court record in detail. It first noted that the date on which petitioner's conviction became final was November 18, 2016, because that was the date on which the time for him to seek leave to appeal from the Appellate Division's affirmance of his conviction on direct appeal to the New York Court of

Appeals expired.[1]  It then noted that although petitioner had obtained two statutory tolls by reason of having filed three motions under N.Y. C.P.L. § 440.10, one of those tolls had ceased when he failed to properly seek leave to appeal.  All told, the calculations showed that he filed the instant habeas corpus proceeding 42 days too late.

In his response to the Order to Show Cause, petitioner, except in one immaterial respect, does not seem to contest the Court's calculations.  Instead, he makes several points that would give him a later date on which his conviction became final, or a longer toll from his §440 motions, or an alternative accrual date other than his final conviction date.  None of these points are valid.  Each one is discussed below, but not necessarily in the order in which petitioner has presented them.

First, petitioner notes that at the time his conviction became final under § 2244(d)(1) on November 18, 2016, his first § 440 motion was already pending.  In fact, it had been pending for 21 days prior to November 18, 2016.  He seeks an additional toll for those 21 days, purporting to invoke 28 U.S.C. § 2244(d)(2), by claiming that he had a statutory toll from the day he filed his first § 440 motion.  This, at least, would subtract 21 days from his 42-day late filing.

But one cannot toll a time period that has not yet begun to run.  Cf. Thomas v. Salazar, 559 F. Supp. 2d 1063, 1067 (C.D. Cal. 2008) (where state court collateral challenge was filed and determined prior to direct appeal, there was no statutory toll); Laboy v. Carroll, 437 F. Supp. 2d 260, 264 (D. Del. 2006) (state court collateral challenges, one of which was filed and decided before the petitioner's conviction became final, and one of which was filed after expiration of the one-year filing period, did not effect a toll).  His conviction was not final, and his one-year

---

[1] Petitioner later did move for leave to appeal to the New York Court of Appeals, but about two years too late.

period therefore did not begin to run, until his time to seek leave to appeal to the New York Court of Appeals expired. The fact that his first § 440 was pending on November 18, 2016, even though commenced earlier, means that he obtained a toll from November 18, 2016 until his first § 440 motion was decided – but not before. And the calculation in the Order to Show Cause in fact gave him credit for that post-November 18, 2016 toll.

Second, although petitioner got the appellate procedure backwards when his §440 motion was denied, he contends that it should count as "properly filed" anyway. As the Order to Show Cause set forth, what happened was this. When his §440 motion was denied, instead of filing a motion for leave to appeal in the Appellate Division, he filed it in the wrong court, the Queens County Supreme Court. He also filed in the Supreme Court a notice of appeal from the §440 decision – which would have been proper if the denial was appealable as of right, but it was not. Petitioner nevertheless argues that because the Appellate Division did not return the motion for leave to appeal, it should be deemed "properly filed" because the Appellate Division "accepted" it.

This is wrong. Courts rarely return papers. If they are procedurally improper, they typically enter an Order dismissing or disallowing the improper filing. The fact that in petitioner's case, the Appellate Division dismissed the purported appeal as not appealable by right or by permission does not change the fact that the petitioner improperly filed his appeal in the wrong court. He never utilized the proper procedure for seeking review of the denial of his §440 motion, and thus the one-year period started running when the state court denied his §440 motion. See Artuz v. Bennett, 531 U.S. 4, 8 (2000) ("[A]n application is '*properly* filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings.").

<mark>3</mark>

But petitioner's main argument seems to be that the date on which his conviction became final – again, November 18, 2016 – should not be the date on which his one-year period began to run. Instead, he offers one or two related alternatives. The first is that he has "newly discovered evidence," and under 28 U.S.C. § 2244(d)(1)(D), his one-year period did not begin to run until "the date on which the factual predicate of the claim … could have been discovered through the exercise of due diligence." However, an examination of his claim shows that there is nothing properly classified as "newly discovered evidence," and even if there was, he knew or should have known about it before his conviction became final.

The newly discovered evidence that petitioner posits takes two forms. First, he contends that when, prior to the submission of the case to the jury, the prosecution withdrew the count in the indictment for criminal possession of stolen property in the fifth degree (N.Y. Penal L. § 165.40), and the jury then convicted him, *inter alia*, of robbery in the third degree (N.Y. Penal L. § 160.05), that was improper. If I am understanding his argument correctly, it was improper for either or both of two reasons. The first reason is that the jury should have been told about the withdrawal of the criminal possession count. The second reason is that there was something inconsistent about convicting him of third degree robbery when the prosecution had withdrawn the criminal possession count.

This argument fails for three obvious reasons: (1) there is no requirement in the law that a jury has to be told that the prosecution has withdrawn a lesser count, as long as the jury is properly instructed on the remaining counts and told to decide those; (2) there is no "inconsistency" between the prosecution withdrawing the criminal possession count and the jury convicting petitioner of robbery – they are different charges with different elements; and (3) in any event, the withdrawal of the possession count and conviction on the robbery count cannot be

4

considered "newly discovered evidence" because, whether phrased as a due process violation or an ineffective assistance of trial counsel claim for counsel's not raising it to the trial court, petitioner is charged with knowledge of it either the moment the prosecutor withdrew the possession charge, or, at the latest, when the jury convicted him on the robbery charge. There is thus nothing "new" that he "discovered" prior to his conviction becoming final on November 18, 2016. The fact that a light bulb may have gone on for petitioner at some later date does not mean he lacked any necessary facts prior to his conviction becoming final for the argument to have been known earlier.

The second piece of "newly discovered evidence" on which petitioner relies suffers from other deficiencies. At trial, the victim testified that on September 22, 2012, petitioner forced his way into her apartment when she, thinking it was someone else knocking, opened the door. She further testified that when she attempted to call 911, he hit her in the face and stole her cellphone, referred to in the state court proceedings as the "black cellphone" or "Obama phone", out of her hand. He also took an additional cellphone she owned, referred to as the "Android cellphone." Once petitioner left with her phones, the victim called 911 on her friend's phone and the police responded. The victim, accompanied by the arresting officer, who also testified, canvassed the area looking for petitioner. They found him, and the officer placed him under arrest, recovering the black cell phone from petitioner's pocket (which the victim identified at trial). A search of the area did not locate the Android cellphone.

At trial, a "sprint" report showing the data from the victim's call to 911 was introduced into evidence. Although the scope of any redactions is not clear, it appears that, as is typical, the calling number was redacted from the report, without objection, to protect the privacy of the owner of that number from disclosure on the public record. Some time considerably after his

5

conviction became final, petitioner came up with the speculation that the phone number, had it not been redacted, would show that the call to 911 was made from one of the allegedly stolen telephones. (The speculation is not based on anything I can find in the record except that the police never recovered the Android phone.) This, petitioner contends, would have impeached the victim's testimony by showing that she did not, as she testified, make the call from her friend's cellphone, nor could petitioner have stolen two phones from her as she testified he did.

The argument fails for these reasons: First, it is based on speculation. Other than the failure to locate the Android cellphone, there is no reason to believe that the redacted phone number would impeach the victim's testimony. In fact, whether newly discovered or not, there is no evidence to support petitioner's argument because he cannot attest that the redacted information could have been used to impeach the victim; he can only guess at it. Second, even if there was some admissible evidence, the evidence again would perhaps be newly realized, but it would not be newly discovered. The redacted sprint report was entered into evidence at trial. Nothing prevented petitioner from making the same argument immediately after his conviction as he is making now.

Having failed at his "newly discovered evidence" argument to postpone the accrual date of his conviction, petitioner advances an overlapping argument that he calls "actual innocence" to extend the accrual date of his one-year period. He relies on the same facts – the redacted phone number and the dismissal of the criminal possession count – to show that he is actually innocent. Assuming that there is such a thing as a free-standing actual innocence claim, these allegations do not show it. As noted, there is no error in the prosecution's withdrawal of the criminal possession count and submission of the robbery count to the jury. Moreover, even if the 911 report showed a basis for impeaching the victim, it would not make it unreasonable for a

juror to still believe that petitioner assaulted the victim, stole one or two cellphones, repeatedly violated the Orders of Protection, resisted arrest, and attempted to bribe the victim. See Maxwell v. Fischer, No. 04-cv-4477, 2008 WL 3992158 (E.D.N.Y. Aug. 22, 2008).

There is thus no basis for using an accrual date for § 2244(d) other than the date on which petitioner's conviction became final. Giving him full credit for statutory tolls on properly filed collateral challenges to his conviction, the instant petition for habeas corpus relief was filed beyond the one-year period and is untimely. The petition is therefore dismissed.[2]

Because the petition raises no substantial constitutional question, a certificate of appealability will not issue. See 28 U.S.C. § 2253(c). An appeal would not be taken in good faith and therefore *in forma pauperis status* is denied for purposes of appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

**SO ORDERED.**

                                                                                            U.S.D.J.

Dated: Brooklyn, New York
       May 2, 2019

---

[2] Petitioner may be making a cursory request for equitable tolling, the basis for which was explained in the Order to Show Cause. But the only ground he advances is that he is a layman not learned in the law. That is insufficient for equitable tolling. See Smith v. McGinnis, 208 F.3d 13 (2d Cir. 2000); Francis v. Miller, 198 F. Supp. 2d 232 (E.D.N.Y. 2002). In addition, it should be noted that, for reasons not disclosed in the record, petitioner rejected court-appointed appellate counsel on his direct appeal and chose to proceed *pro se*. That decision may have cost him some of the arguments that occurred to him later.